**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| STEWART ISAAC | CIVIL ACTION |
|---|---|
| VERSUS | |
| | NO. 15-00013-SDD-RLB |
| LOUISIANA DEPARTMENT OF CHILDREN AND FAMILY SERVICES AND SUZY SONNIER, SECRETARY, LOUISIANA DEPARTMENT OF CHILDREN AND FAMILY SERVICES | |

## RULING

Before the Court is Defendants' *Motion to Dismiss* for failure to state a claim.[1] Plaintiff, Stewart Isaac, has filed an *Opposition*[2] to which Defendants have filed a *Reply*.[3] For the following reasons, Defendants' *Motion* shall be denied.

**I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY**

In this disability action, Stewart Isaac ("Isaac") has asserted claims arising under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA") against the Louisiana Department of Children and Family Services ("DCFS") and Suzy Sonnier, in her official capacity as Secretary of DCFS. According to his *Complaint*[4], Isaac has Crohn's disease, a gastrointestinal disorder, which causes him frequent, painful attacks of diarrhea. Due to his disability, Isaac is unable to work and receives assistance though the federal program, Supplemental Nutrition Assistance Program ("SNAP"), which is administered by DCFS.[5] In November of 2013, DCFS sent

---

[1] Rec. Doc. 9.
[2] Rec. Doc. 11.
[3] Rec. Doc. 12.
[4] Rec. Doc. 1.
[5] Rec. Doc. 1, p. 3, ¶9.  SNAP benefits are commonly referred to as "food stamps".
27305

Isaac a Notice of Expiration of his SNAP benefits which explained that he would need to participate in a telephone interview on December 5, 2013. Additionally, Isaac was instructed to complete an on-line application prior to his scheduled telephone interview, or the interview would not occur. Isaac, however, did not have access to a computer. Therefore, he contacted DCFS and was told that he could pick up a paper application and mail it to DCFS.[6] Isaac contends he complied with these instructions.

Approximately one month lapsed during which time Isaac was never contacted by DCFS and his food stamps expired. Hence, on January 10, 2014, Isaac went to the DCFS office in LaPlace, Louisiana, where he was informed by a DCFS employee that his application had not been received.[7] This same employee gave Isaac another paper application and told him that he could take the application home, complete it, and then return it to the LaPlace DCFS office. Again, Isaac complied. However, when Isaac returned with his completed application on January 14, 2014, a different DCFS employee refused to accept his application, insisting in an allegedly rude and loud manner that the application had to be completed on-line. When Isaac informed her that he did not have access to a computer, the DCFS employee told him he could wait and someone would assist him in filing his application on-line.

Isaac alleges that the DCFS employee's rude treatment caused him immediate embarrassment, stress, nervousness, and anxiety, and within five minutes of their interaction, he began to experience sharp pains that had, in the past, preceded episodes of incontinence. Visibly upset, Isaac explained to the DCFS employee that he could not wait any longer due to his Crohn's disease. However, the DCFS employee

---

[6] In his *Complaint*, Isaac claims that the woman's name was Michelle. Rec. Doc. 1, p. 3, ¶11.
[7] According to his *Complaint*, the DCFS employee's name was Ms. Stewart. Rec. Doc. 1, p. 3, ¶12.
27305

did not acknowledge or inquire further about his statement regarding Crohn's disease. Instead, she instructed him to continue to wait and someone would be with him shortly. Before anyone could assist Isaac, he soiled himself and left without being permitted to submit his SNAP application. As a result, Isaac did not have SNAP benefits until sometime in April of 2014.[8]

Isaac filed the instant lawsuit against Defendants for failing to adopt policies and procedures to effectively accommodate disabled persons in accessing and maintaining their eligibility for SNAP benefits. He further alleges that Defendants failed to train DCFS staff regarding the rights of individuals with disabilities to such accommodations in the process of accessing and maintaining eligibility for SNAP benefits, programs, and services. Due to Defendants' alleged failures, Isaac claims he was denied meaningful access to SNAP benefits and that his ability to access SNAP benefits in the future remains in jeopardy. Isaac seeks various forms of relief, including compensatory damages, a permanent injunction, and declaratory relief.

Defendants now move for dismissal of Isaac's claims under Rule 12(b)(6), which Isaac opposes.

## II.    LAW

### A.    Rule 12(b)(6) Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[9] However, "the tenet that a court must accept as true all of the allegations contained in a

---
[8] According to his *Complaint*, Isaac's attorneys sent a letter to DCFS and, thereafter, his application was accepted and his benefits were reinstated. Rec. Doc. 1, p. 4, ¶21.
[9] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999)).
27305

complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."[10] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[11] Rather, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[12] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[13] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] Furthermore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[15] On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[16]

---

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (hereinafter "*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, at 555 (2007) (hereinafter "*Twombly*").
[11] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (S.D. Tx. May 3, 2012)(quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[12] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (5th Cir. 2007)(quoting *Twombly,* 550 U.S. at 570).
[13] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[14] *Id.*
[15] *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted).
[16] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)(quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).
27305

B.  ADA and RA Claims

Congress enacted the ADA "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."[17] Under the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity."[18] Similarly, under the RA, "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[19] A qualified individual with a disability is "an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices….meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."[20] Public entities include "[a]ny State or local government" and "[a]ny department, agency, special purpose district, or other instrumentality of a State or States or local government."[21]

The elements of a *prima facie* claim under the ADA or the RA are generally the same, such that "jurisprudence interpreting either section is applicable to both."[22] Therefore, in order for a plaintiff to state a claim under the ADA or the RA, a plaintiff

---

[17] 42 U.S.C. § 12101(b)(1).
[18] 42 U.S.C. § 12132.
[19] 29 U.S.C. § 794(a).
[20] A person has a disability when he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1).
[21] 42 U.S.C. §12131(1).
[22] *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. ), cert. denied, 531 U.S. 959 (2000). *See also*, *Kemp v. Holder*, 610 F.3d 231, 234 ((5th Cir. 2010)("[t]he RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts").
27305

5

must demonstrate: "(1) that he is a qualified individual with a disability within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability."[23] Notably, "[t]he only material difference between the [ADA and the RA] lies in their respective causation requirements."[24] "Under Title II of the ADA, '"discrimination need not be the sole reason"' for the exclusion or denial of benefits to the plaintiff, while the Rehabilitation Act requires a plaintiff to show that he or she was discriminated against '"solely by reason of her or his disability."'"[25]

In addition to claims for denial of benefits, disabled persons can also bring "reasonable accommodation" claims under the ADA.[26] "The regulations implementing the ADA require that '[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'"[27] "If modifications are necessary to avoid discrimination, the ADA and [RA] 'impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. Where a defendant fails to meet his affirmative obligation, the cause of that failure is irrelevant.'"[28] Moreover, "[t]he

---

[23] *Melton v. Dallas Area Rapid Transit,* 391 F.3d 669, 671-72 (5th Cir. 2004).
[24] *Van Velzor v. City of Burleson*, 43 F.Supp.3d 746, at 752 (N.D. Tex. 2014).
[25] *Id. (citing Bennett-Nelson v. La. Bd. of Regents,* 431 F.3d 448, 454 (5th Cir. 2005)(29 USC §794(a)). (internal quotations omitted).
[26] *Id.* (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005)).
[27] *Id.* (quoting 28 C.F.R. §35.130(b)(7)).
[28] *Id.* (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005)).
27305

accommodations must be sufficient to provide a disabled person 'meaningful access to the benefit' or service offered by a public entity."[29] In order to establish a reasonable accommodation theory of discrimination, the second and third prongs of the disability-based discrimination *prima facie* case are slightly modified. "Specifically, a plaintiff can satisfy the second and third prongs of the *prima facie* case of disability discrimination by establishing that the public entity has failed to make reasonable accommodations for a disabled person who uses the services provided by the public entity."[30]

### III. ANALYSIS

#### A. Has Isaac Stated a Viable Claim Under Title II and the RA?

Defendants are essentially seeking dismissal of Isaac's claims arguing he cannot satisfy the second and third elements of his *prima facie* case. Defendants contend that Isaac has failed to allege any facts that indicate that he was treated differently than any other non-disabled individual attempting to obtain SNAP benefits. They further argue that Isaac's claims fail to show that he was denied access to the SNAP program because of his disability. Lastly, Defendants assert that the allegations themselves indicate that DCFS provides reasonable accommodations to persons with Crohn's disease and that Isaac ultimately received his SNAP benefits. The Court finds that Defendants' arguments fail under the 12(b)(6) motion to dismiss analysis.

Considering that the parties are in agreement that Isaac has sufficiently pled that he is a qualified individual within the meaning of the ADA, the Court turns its attention to the second element of the *prima facie* ADA and RA case.

---

[29] *Id.*
[30] *Borum v. Swisher County*, 2015 WL 327508, at *4 (N.D. Tex. Jan. 26, 2015).

First, as correctly pointed out by Isaac in his brief, a plaintiff need not show that his alleged denial of benefits is due to disparate treatment on the basis of disability. In *Van Velzor v. City of Burleson*, the district court noted that "ADA jurisprudence does not focus solely on this comparison-type evidence."[31] Instead, "[c]ourts have found that a 'public entity is not only prohibited from affording to persons with disabilities services that are not equal to that afforded to others, or not as effective in affording equal opportunity,' but also the public entity 'cannot prevent a qualified individual with a disability from enjoying any aid, benefit, or service, …regardless of whether other individuals are granted access.'"[32] For this reason, the Court finds that the absence of disparate treatment allegations in Isaac's *Complaint* is not fatal to Isaac's claims.

In this case, Isaac has alleged that the Defendants' discrimination stems from their failure to make reasonable modifications to DCFS policies that would have provided him with meaningful access to the SNAP program's benefits. "A core element for reasonable modification, whether under Title I, II, or III, is that the plaintiff has been denied meaningful access to public places, benefits, or services, i.e., the kind of access that would be 'necessary to avoid discrimination on the basis of disability.'"[33] Therefore, the fact that Defendants provided other means for Isaac to submit his SNAP application and that Isaac "ultimately" received SNAP benefits, does not necessarily defeat Isaac's claims. Rather, the question for the Court is whether Isaac has sufficiently pled facts to show that he was denied meaningful access to Defendants' SNAP benefits and that a reasonable modification in Defendants' policies could have prevented such denial.

---

[31] *Van Velzor v. City of Burleson*, 43 F.Supp.3d 746, 755 (N.D.Tex. Sept. 4, 2014).
[32] *Id.* (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 274 (2d Cir. 2003)).
[33] *Van Velzor v. City of Burleson*, 2013 WL 3579339, at *4. (quoting 28 C.F.R. § 35.130(b)(7)).

27305

Construing the allegations of the *Complaint* in a light most favorable to Isaac, the Court finds that he has sufficiently pled a denial of "meaningful access" to a benefit or service provided by DCFS. Isaac has alleged that DCFS administers the federal program SNAP, which provides benefits known as "food stamps." In his *Complaint*, Isaac claims that, when he attempted to comply with the alternative methods for submitting his SNAP application—by regular mail and in person—they proved to be ineffective. His first application sent through the regular mail system was never received by DCFS. On his second attempt to submit his SNAP application in person to the DCFS office, it was refused and he was told that all applications had to be submitted on-line. During this latter incident, Isaac informed the DCFS employee that he had Crohn's disease, which at the time had started to flare up, and, therefore, he could not wait for assistance in submitting his application on-line. Although Isaac attempted to comply with the alterative filing options, on both occasions, his application was never submitted, resulting in an interruption to his SNAP benefits. As pled, the alternative means or accommodations offered by Defendants for submitting SNAP applications were arguably insufficient to provide Isaac, a disabled person, with access to the SNAP program. Therefore, the Court further finds that Isaac has sufficiently alleged that Defendants failed to provide him with a reasonable accommodation or modification of their policies to allow Isaac meaningful access to the services or benefits of the SNAP program for which the Defendants were responsible.

As for the third element, Isaac has alleged that his access to SNAP benefits was diminished on account of his disability--Crohn's disease. In his *Complaint*, Isaac alleged that, on his final visit to the DCFS office, he had eaten prior to leaving his home

27305

because he had expected to simply drop off his application. When Isaac learned from the DCFS employee that his hand-written application would not be accepted, and that he would have to wait to meet with someone to properly file his application on-line, he began to experience a Crohn's attack. Isaac told the DCFS employee he could not wait any longer because he had Crohn's disease, but she allegedly made no additional inquiries about his disability to determine if a disability accommodation was appropriate. Ultimately, Isaac left without being permitted to submit his SNAP application. At this stage, the Court accepts all well-pled facts as being true. Therefore, based on the foregoing, Isaac's access to SNAP benefits, as pled, was diminished due to his disability. Accordingly, the Court finds that Isaac has satisfied the third element necessary to support his Title II and RA claims.

Based on the foregoing, the Defendants' Motion shall be denied to the extent they seek dismissal of Isaac's Title II and RA claims.

**B.    Injunctive Relief**

Defendants argue that Isaac has failed to allege sufficient facts to support his claim for injunctive relief. A plaintiff seeking a permanent injunction must demonstrate: "(1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[34] At this stage in the proceeding, Isaac must set forth factual allegations that support his claim for injunctive relief. Here, Isaac has pled that the Defendants' policies and failure to properly train their employees has resulted in the

---

[34] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

denial of his SNAP benefits and will continue in the future without injunctive relief. The Court can reasonably infer from the allegations that Isaac's need for SNAP benefits, and any interruption to such services or benefits, would be an extreme hardship to him and cause him further injury. While it may be "apparent" to the Defendants "that monetary damages would be sufficient to compensate Plaintiff for any loss of benefits," in order for the Court to make such a determination would require the consideration of evidence which is inappropriate at this stage in the proceeding.[35] Therefore, after reviewing the factual allegations in the *Complaint*, the Court finds that Isaac has satisfactorily pled a claim for injunctive relief.

### C. Claims for Compensatory Damages

Within the Fifth Circuit "[a] plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination."[36] Additionally, "[t]he Fifth Circuit has made it clear that a defendant's failure to make reasonable accommodations to the needs of disabled persons can constitute intentional discrimination under the ADA and the [RA]."[37] As discussed herein, the Court has found that Isaac has asserted viable claims under Title II of the ADA and the RA based on Defendants' alleged failure to provide reasonable accommodations to Isaac on account of his disability. In his *Complaint*, Isaac alleged that he informed the DCFS office employee of his Crohn's disease and became visibly upset, ultimately soiling himself when she denied his request to submit a hard-copy of his SNAP application. These factual allegations, taken as true, allow the

---

[35] Rec. Doc. 9-1, p. 12.
[36] *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). See also, *Tatum v. Bd. of Supe'rs for Univ. of La. System*, 9 F.Supp.3d 652 (E.D.La. 2014).
[37] Borum v. Swisher County, 2014 WL 481451, at *10 (N.D.Tex. Sept. 29, 2014).
27305

Court to draw the reasonable inference that the Defendants' employee may have acted with intentional disregard to Isaac's disability and that she may have intentionally failed to provide him with a necessary and reasonable accommodation. Accordingly, the Court finds that, at this stage in the case, Isaac has sufficiently pled a claim for intentional discrimination.

IV. **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the *Motion to Dismiss*[38] filed by Defendants, Louisiana Department of Children & Family Services and Suzy Sonnier, in her official capacity as the Secretary of the Louisiana Department of Children & Family Services, is DENIED.

Signed in Baton Rouge, Louisiana, on July 6, 2015.

*Shelly D. Dick*
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[38] Rec. Doc. 9.
27305